IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LARRY CARL DIXON,               )
                                )
        Plaintiff,              )
                                )
v.                              )       CIVIL ACTION NO.  2:04CV85-ID
                                )
DONAL CAMPBELL, *et al*,        )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, the plaintiff complains that various correctional defendants violated his constitutional rights in different ways, all of which relate to his disagreement with his job assignment at the recycling center at the Elmore Correctional Center (Elmore).  In response to the orders of the court, the defendants filed a special report and answer. The court then informed the plaintiff that the defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment.  The plaintiff has filed his response, and this case is now before the court for consideration of the defendants' motion for summary judgment which the court concludes is due to be granted.  After a brief introduction, the court will discuss the plaintiff's claims.

In *Brinkley v. Harrelson*, 2:01cv1287-WHA (M.D. Ala. 2002), the parties entered into a settlement agreement regarding challenges to the working conditions for inmates at the recycling facility at Elmore.  That agreement, negotiated by counsel for the plaintiff class of

which the plaintiff in the instant case is a member, resolved the existing claims, but by its terms did not bar further legal action by members of the class. Earlier in this case, the court dismissed the plaintiff's claims to the extent they were premised on a violation of that settlement agreement. Thus, the only remaining claims are the plaintiff's claims for individual relief against the named defendants.

## I. Claims Against Ralph Perkins

Perkins is the laundry officer at Elmore. The plaintiff contends as follows:

> Ralph Perkins Laundry, do wash the trashman (sic) gloves[1] with the very sheets inmate population actually sleep on, on a daily basis. Causing rashes of an incurable nature across the state of Alabama filthy infectious rashes, that create sores around genital areas for life.

(Pl's Resp. Mot. Summ. J. at 9.)

Although the court must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation, a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (A pro se litigant's allegation of contaminated drinking water found unsubstantiated and completely speculative because the litigant failed to submit a doctor's diagnosis for any medical examination evidence supporting those allegations). In addition, FED.R.CRIM.P. 56(e) requires that affidavits be made on personal

---

[1] The gloves used by the inmates at the recycling center to separate recycling materials from the general trash.

knowledge.

The plaintiff does not explain how he knows what items are washed together.  But more to the point, his claim that the method of washing causes rashes is purely speculative. The plaintiff does not submit any evidence supporting this claim and does not show how he has the requisite expertise to make the claim himself.  Accordingly, Perkins' motion for summary judgment on this is due to be granted.

## II.  The Incurable Disease Punishment Claim

The plaintiff contends that all of the defendants "continue to subject inmate's (sic) to incurable diseases across the whole state of Alabama  . . . [and] that upon any infraction Inmates are sent too (sic) recycle for punishment titled job change."  In essence, the plaintiff claims that the defendants violated his Eight Amendment rights by assigning him to a job at the Elmore recycling center because in those jobs inmates are exposed to hazardous materials such as "hypodermic infected needles, and sharpe (sic) bones of infected animal carcasses . . . "  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v.  Brennan*, 511 U.S. 825 (1994).  Obviously, the plaintiff finds work at the recycling facility disagreeable.  However, his fears about the consequences of that work are not the equivalent of a showing that the work entails a risk of substantial harm unabated by the defendants.  Indeed, the plaintiff has failed to come forward with any evidence that

shows that any defendant was aware of a risk of substantial risk of harm to the plaintiff *and* failed to act.  The *Brinkley* settlement agreement which provides for specified protections for inmates working at the recycling facility reflects that it was approved by the court approximately 70 days after the case was filed.  The rapidity with which that agreement was executed evidences precisely the type of ameliorative action which demonstrates that the Eighth Amendment has not been violated as to the plaintiff.  The defendants are entitled to summary judgment on this claim.

### III.  Disease Control Protocols

The plaintiff contends that when inmates are infected, the Center for Disease Control protocols are not followed.  The plaintiff, however, fails to show that any of the named defendants have any such responsibility, assuming it exists.  Beyond mentioning Hepatitis C and HIV, the plaintiff does not specify which of those protocols the defendants did not comply with.  And, more to the point, the plaintiff fails to show that failure to comply with any protocols constitutes a substantial risk of harm to the plaintiff.  In the absence of that proof, the defendants are entitled to summary judgment on this claim.

### IV.  The Retaliation Claim

The plaintiff contends that when he complained about the efficacy of the *Brinkley* settlement, he was punished through the use of prison disciplinary proceedings.[2]  The method

---

[2]The plaintiff also complains about the procedural aspects of the disciplinary proceedings.  As a consequence of those proceedings he lost visiting, phone and store privileges for a period of days and was referred to classification.  These punishments are not "atypical and significant hardship. . .in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  Thus, the Due Process clause is not implicated by any procedures used during the disciplinary procedures.

of establishing a retaliation claim is essentially the same as for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-01 (11ᵗʰ Cir. 1986). An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  To establish a prima facie case, an inmate must show that he was engaged in protected activity, such as the filing of a lawsuit; that he suffered adverse treatment simultaneously with or subsequent to such activity; and that there was a causal link between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-01.

If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate.  This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence.  The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine, supra*.  Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation.  An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse

5

decision is not worthy of belief.  By so persuading the court, the inmate satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful retaliation.  *Burdine, supra*.

For analytical purposes, the court will presume that the plaintiff meets his prima facie burden. The defendants have articulated a non-retaliatory reason for the disciplinary actions: the plaintiff's refusal to obey a correctional officer's order and insubordinate conduct.  Thus, the burden is upon Dixon to come forward with evidence from which a trier of fact could reasonably conclude that a retaliatory reason is the more likely motivation or that the proffered reasons are not worthy of belief.  Suffice it to say that the plaintiff has offered nothing more that his own conclusory contentions.  First, there is no evidence which shows that the plaintiff was *punished* for anything by the assignment to the recycling center.  As indicated above, with respect to the two disciplinary actions against him, the only punishment was revocation of some of his privileges and reclassification.  Second, the plaintiff's reference to genocide or "genetic annihilation" by the job assignment is representative of the plaintiff's hyperbole when speaking of the issues.  Third, a hearing was held concerning the charges against the plaintiff at which he had the opportunity to and did defend himself against the charges.  Fourth, there is no evidence before the court which shows that any of the involved defendants were aware of any of the plaintiff's activities complaining about the settlement. The defendants are entitled to summary judgment on this claim because there is no evidence from which a reasonable jury could conclude that the disciplinary actions were retaliatory.

6

### V. Conclusion

Much of the plaintiff's pleadings and his response to the motion for summary judgment are rambling explications of his obvious fear of becoming infected by coming into contact with hazardous materials at the recycling plant. While the court appreciates those concerns, the plaintiff is not entitled to relief because he has not demonstrated that any actions of the defendant expose him to a substantial risk of harm. Put another way, the plaintiff has failed to demonstrate that working at the recycling plant creates a "sufficiently serious" risk of harm. *Farmer*, *supra* at 834. In prisons, just as in life outside prison walls, work entails risk; therefore, the mere existence of any risk of harm is not sufficient to create a constitutional violation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("The Constitution, we said, does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (internal citations and quotations omitted)). In the same vein, the plaintiff has failed to demonstrate that working at the plant caused him to suffer any illness. While the plaintiff contends that he was the victim of "poisoning and blood borne pathrogens (sic)," injuries he claims happened after the execution of the settlement agreement in *Brinkley*, the plaintiff fails to come forward with any medical or other expert evidence substantiating such claims. *See Brown v. Crawford, supra.* In short, the plaintiff has failed to meet his burden on summary judgment and the defendants are entitled to judgment in their favor. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants'

motion for summary judgment be granted and that this case be dismissed with prejudice.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before May 1, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of April, 2006.

                /s/Charles S. Coody

CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE